Parties are ready to proceed. You may begin. Good morning, your honors. My name is Vicki Dobrin. May it please the court. I represent the petitioner, Mr. Alonso. I'd like to start off by talking about Alvarado Herrera and to point out that in that case, the court explained the purpose of a reasonable fear interview and the court explained that these are supposed to be very brief screening interviews to weed out frivolous claims. The court also pointed out that an individual's own credible testimony can be sufficient to meet his burden of establishing a 10% chance of persecution or torture. Based on that case, we believe Mr. Alonso met his burden here. Let me ask you because your time is limited. I have just a few questions for you. It seems, if I understand your position regarding Alvarado, that your case, I think you're arguing is distinguishable from Alvarado because you're relying from what it seems like the trier of fact language. I want to make sure if I'm correct on that for your ultra-various argument and that statute was not in your position analyzed sufficiently in Alvarado. But I guess, one, is that correct? Am I assessing your argument correctly? And if I am, why is it clear that by writing trier of fact into the statute, Congress meant exclusively an IJ and not an asylum officer? You're right, Your Honor, that we are arguing that that argument wasn't made in Alvarado Herrera. And I guess I want to first point out, I don't know that the court sitting as a panel can revisit a published decision unless the court were to consider this en banc. I'd like to preserve the argument in the event that that were to happen. But as far as your question about trier of fact, I mean, I do believe that the Congress envisioned that individuals would be eligible to apply before an immigration judge simply because this is within the same statutory scheme as the reinstatement bar to all relief. And so, you know, they listed all of the situations in which an individual applying for withholding would not be eligible. They listed out in there all of the statutory bars and they didn't list, they didn't reference the reinstatement bar to relief. And so we believe that they were, they intended for the trier of fact to be an immigration judge. And isn't an asylum officer also a trier of fact, like for example, in making credibility determinations in affirming asylum claims? They are, but asylum officers don't adjudicate withholding and cat claims on the merits. They only are tasked with screening those cases. And so we would argue that they don't necessarily, they don't necessarily constitute a trier of fact ultimately because they can't ultimately adjudicate those claims. To go though to the chief judge's question, if the asylum officer finds credible fear, that's the end of that issue, right? The issue as to whether you get to move on to the next Yes. Yes. So, so to that extent where the statute talks about trier of fact, if the asylum officer decides that there is a sufficient showing, there's nobody else who could be the trier of fact there, right? Right. Yes, that's true. I mean, and I also would argue, and I don't want to take up a lot of time on this just because I feel like we do have very strong arguments on the merits of the case, even assuming that the statute, the regulations are not ultra-virus, but I just also want to point out that Congress directed the agency to draft regulations specifically as to CAT protection, not as to withholding of removal. And so because of that, when the agency drafted those regulations, they had authority to create this limiting structure as to CAT claims, but they were not tasked with doing this as to statutory withholding. And so I feel like that is another argument that really wasn't raised or considered by the panel. But again, I don't know that the court here today can revisit this unless it's the en banc court would like to hear this issue again, and I'd like to just turn to the merits of Mr. Alonzo's case. I do believe he met his burden of establishing with his credible testimony that he has at least a 10% chance of being persecuted on account of his membership in a particular social group and torture by or with the acquiescence of a public official. And even if the court were to not agree with us or not be clear whether on this record he met his burden, the court has to find that there are significant problems with the way the agency adjudicated this case. I mean, it's undisputed that the asylum office's decision is based on incorrect facts. But didn't the IJ, I don't remember whether it was himself or herself, but didn't the IJ point that out? Didn't the IJ emphasize that the asylum officer apparently was conflating this case with a different case and then discuss the correct facts about the disappeared brother or disappeared half-brother, etc? Well, not exactly. In fact, counsel, which was, I was counsel, I pointed this out to the immigration judge. There was an off-the-record conversation. I explained there were mistakes and not only factual ones, but legal errors, like faulty legal analysis. And then when we went back on the record, the immigration judge said, okay, I see just one reference to a stepfather. That's the only problem I have with this. It's a Scrivener's error. And clearly... I understand. I mean, I'm saying it was a Scrivener's error when it seems like there was a reference to an entirely different case. I'm not sure that's Scrivener's error, but the issue that I'm trying to figure out here is the IJ, though, then did allow you or your client to supplement or add more to the record, if I understand correctly, and for his consideration. And also, I mean, ultimately the IJ determined this case in every aspect, you know, on the first issue and on this issue. So doesn't that undermine your arguments here? Well, Your Honor, I don't believe that she really allowed us to present any testimony. She didn't meaningfully consider his claim. If you look at the transcript, it's just maybe 10 pages. She asked a couple of questions and then almost immediately after, maybe two pages, summarily determined that he didn't meet his burden and that she was going to uphold the asylum officer's decision. By that point, there was no indication that she was considering the actual facts in his case. There's no evidence. She didn't say she was doing that. She referenced, again, going back to the Scrivener's error. I mean, that's an indication that she didn't really review the record because the asylum officer's decision not only talks about the stepfather. But as Your Honor pointed out, there's an analysis of like social groups he never set forth, an imputed nationality claim he never presented. There's no analysis at all of his actual claim. And then the immigration judge, in conducting the hearing, didn't indicate she was considering the actual facts and then allowed very little testimony, didn't indicate that she was considering the country conditions evidence, which we presented. There's no mention at all of those documents. And then when she said I could ask Mr. Alonso questions, I started to question him about another aspect of his fear and she quickly cut this off. And so that aspect of his case was never developed. And so I don't think that this court can have confidence in the agency's decision because it's not clear that it's based on the right facts. Yeah, but it seems to help me out on the merits. If you can recite the facts that are the most favorable to a determination that the asylum officer made a mistake in finding no reasonable fear. So Mr. Alonso credibly testified that his brother was disappeared by a cartel in Mitchell. It was a half brother, I think. A half brother, but they grew up together and have the same last name. And after he was abducted from the home, his mother and sister-in-law went to the authorities and reported it. And the next day the police, the cartel showed up at their house, was clearly aware that they had reported it, and then mentioned that and threatened to kill everyone in the family if they didn't immediately leave. And so the family fled. And so under Alvarado Herrera, that credible testimony, it's enough to meet a 1 in 10 chance that he would be persecuted on account of his family membership and or tortured. How long ago did this take place? This was in 2006. And your client was in the United States at this time? Yes. And when did your client leave for the United States? He left, oh, sorry, Your Honor. He left in 2003, but there were other problems that he had that prompted him to leave, but which we weren't allowed to develop before the immigration judge. And that's the money stolen from the uncle or is there something else? Yes, his uncle had a problem with some individuals who were members of the Jalisco cartel, which we documented as one of the most violent cartels in Mexico. And he started to explain the problems that he had after that, but the immigration judge basically just cut that off. And so we don't know what else he was going to say about that. Is there additional evidence that you would present in front of the IJ if this were a full-fledged hearing in front of the IJ instead of an appeal from an adverse decision by the asylum officer? What is the additional evidence? Well, is there additional evidence? There is. Yes. And what's the nature of that? I mean, he would more fully develop what happened with the Jalisco cartel because, in fact, he explained that he had continuing problems, but the judge cut him off. But those problems were that the cartel was coming around his uncle. His uncle fled and he and his wife and family stayed were in that uncle's house and the cartel was continuing to patrol the area. Our men were watching them, following them. And this was going on for several months until he was finally able to do what he needed to do to leave the country. And this was in 2003. This was in 2003. But since then, the Jalisco cartel... Is there additional evidence with respect to the disappearance of the half-brother and the threats to the family that you would develop if this were to go to a full-fledged hearing? We would develop more and we would definitely develop more information. And what would be the nature of that evidence? That other members of the family, they have had problems related to that. And I don't want to speak to things that haven't been like fully fleshed out, but there is more information that he would have been able to present. And then there have been other things that have just happened. I mean, it's been... He had this hearing in 2015. And so, you know, there are more things have happened, but we just... These are very brief hearings. They're not intended to be full-fledged evidentiary hearings. And so, you know, did he meet, did he establish a non-frivolous claim? He did. And so it's... But even if the court isn't sure, it can't really uphold an agency on a decision that's based on the wrong facts and the wrong legal analysis. And that just can't be the case. The court can't do that. And I don't think the court has ever really done such a thing when we have an agency decision that's based on the wrong facts. I'd like to preserve the rest of your time. Sure. Thank you. Thank you. Ms. Dover. Thank you. Good morning. May it please the court. Sharzad Begay for the Attorney General. The court should deny the petition for review because the record evidence in this case does not compel reversal of the negative reasonable fear determination. And I would just first like to start by addressing the court's question with respect to the impact of Alvarado Herrera. Petitioners argument that the reasonable fear procedures or ultraviolence is foreclosed by the holding in Alvarado Herrera. And in that case, the court specifically addressed the legality of those procedures and concluded under step two of Chevron that the reasonable fear screening process is a permissible reading of Congress's intention, both of the intentions first to have swift removal process and reinstatement proceedings while also allowing for a screening process so that individuals who have a reasonable fear have the opportunity to establish that before an immigration judge. Let me push back on that just a little bit. The court in that case, I mean, I read the opinion, it was your question was not addressed and the court really granted relief with respect only to Kat. It did not grant relief with respect to withholding. So I'm not sure that that question wasn't addressed and may in a sense have been left open because the holding of the court that was adverse to the government was really only the Kat claim. How do you respond to that? Okay. Well, I would respond to that by citing the recent case in Amerion, which we filed a 28-G for. In that case, it did involve the withholding as well and the court relied on the Alvarado Herrera holding. Isn't that an unpublished decision? Correct. It is an unpublished decision, but we maintain that in Alvarado Herrera, the court, first of all, looked at two statutes. I understand that, you know, it was section 2242 of FERA and 1231A5 and in looking at those statutes, the court considered also just Congress's objectives and concluded that it basically when you look at those two objectives, this was a reasonable, a permissible reading of those statutes. So we maintain that it's like it flows logically that it would also include withholding and we would submit that Alvarado Herrera forecloses petitioner's arguments in this case with regard to reasonable fear procedures being altruistic. Can I follow up just a little bit on Judge Pletka's question? What do you contend Congress meant by trier of fact in section 1231B3C of Title VIII? Well, as your Honor pointed out, the asylum officer in a reasonable fear proceeding would be considered a trier of fact. I mean, the asylum officer is interviewing the individual and the individual also has the opportunity to have further review before an immigration judge who also can take testimony. So we would submit that it would be considered asylum officer in reasonable fear proceedings. But if the trier of fact can mean an asylum officer in the withholding of removal context, I'm just curious then why do the agency's own regulations require that the IJ be the one to make the final credibility determination and the only one that can grant withholding of removal? Well, I mean, in reasonable fear proceedings, if I'm understanding your question clearly, basically, these are streamlined proceedings where the asylum officer would be the first level and provide that opportunity to the individual. And obviously, if the individual meets a threshold, well, whether or not the individual meets a threshold level, then the IJ would be the next level. And I would submit that it would be the asylum officer that would be the trier of fact in such cases. It's certainly, counsel, if that's what Congress intended, an odd use of the phrase that typically a trier of fact is some type of judicial officer, whether it's in the immigration context or not. I'm unfamiliar with any circumstance in which the term trier of fact is basically somebody like an asylum officer. Are there any other uses of this term where it refers to somebody like an asylum officer that you're familiar with? Well, I would say that, see, ultimately in reinstatement proceedings, the reasonable fear proceedings are meant to be streamlined and ultimately, there has to be some level of screening and that's the reasoning that was used in Alvarado-Herrera. Alvarado-Herrera looked both at Congress's objectives and it just flows naturally that both CAT and withholding would be considered in the same group because these are individuals who are only eligible for that kind of relief and they are not eligible for asylum. So the two things they're eligible for are withholding and CAT. And then there's a streamlined process provided to them and this is a screening mechanism where they can establish whether or not they have that reasonable fear of persecution or torture. And then there's the next level where if they do meet that, then they would be entitled to withholding only proceedings. Let me ask you this. Are there any regulations implementing the statutory provision that is to say does Chevron come into play or are we stuck simply with the statutory language? Is your honor asking about whether or not there's statutory authority for these proceedings? No, I'm asking whether or not there's any regulation that is relevant that we may look to under Chevron for interpreting the statutory language or are we stuck with the bare statutory language? Yes. Well, the bare statutory language does not speak to whether or not under Chevron 1, there is no statute language that specifically says whether or not individuals in reinstatement proceedings are entitled to... Maybe you understood my question, but you didn't quite answer it. I gather from your answer, however, that there's no relevant regulation. Correct. Correct. So the step would be under step 2 of Chevron. And Ms. Begat, do you agree that the Alvarado court, this issue was not raised regarding the TRIRAFACT? This specific issue, as far as I read the decision, that specific issue was not raised in that case. But given that the court considered those two statutes and Congress's objectives, I would submit that under Chevron step 2, it just, it logically makes sense that withholding would be included. And again, as your honors point out, it is unpublished, but the court did rely on Alvarado in that case and it did. But do you know the facts in that case? I mean, one of the reasons we don't really look to unpublish is because there's not a full development of the facts and enough for us to compare. And so we really don't like to have unpublished cases cited as any kind of authority because we're really limited and disadvantaged. But I see why you're bringing it up, but it's just, I'm not sure it's, it may be the authority that you think it is. Okay, I understand your honor. Yes, as far as I read, it did include withholding, but I understand that. Well, did it include TRIRAFACT? It did not include TRIRAFACT, but it did, that was a case which did have a withholding of, it did go to the issue of withholding as well and the court, the ultravirus argument, but as far as I know, it didn't include that specific argument, your honor. So to get to the merits here, what do we do in response to what the petitioner is raising of the proceeding that did occur before the IJ and the fact that I think there's a lot of reliance on the fact that the IJ cut off the petitioner's testimony so that the record, according to the petitioner, was not fully developed. Well, in this case, the immigration judge went really above and beyond what was required for an immigration judge at this stage of, at the reason of your proceeding. Specifically, if you look at the, I point your honors to pages 14 and 17 of the transcript, the immigration judge, there's no, there's no place in the transport of the proceedings where the immigration judge did not allow for the petitioner to testify. And in fact, there were times when counsel did not have a specific question for petitioner and the immigration judge went ahead and prompted the petitioner with questions such as where are your family members? What happened to them? Why do you believe gang members and the police were working together? Do you think you can relocate? And even when the immigration judge noted at some point that what was being presented did not appear sufficient, counsel asked to continue with more questioning and the immigration judge allowed that as well. I've got a question that's in a sense, not a factual question in this case, but with respect to how the statutory system works. I mean, we get a decision by the asylum officer that even assuming the truth of the story, there's no reasonable fear. That's then appealed. And the question in front of the IJ is did the asylum officer make a mistake in holding that there was no, finding that there was no reasonable fear. And that decision can be made solely based upon the record in front of the asylum officer. However, the statute allows additional evidence to be introduced in front of the IJ, but it does not appear that even when such evidence is introduced in front of the IJ as part of the appeal from the decision of the asylum officer, that is the equivalent of a full-fledged hearing in front of the IJ had there been a finding of reasonable fear by the asylum officer. So what am I supposed to make of a case like this one where the asylum officer make a mistake? When the IJ has evidence that was never presented to the asylum officer, this is not your ordinary appeal. And the question in front of the IJ begins to look different from the question that was presented to the asylum officer. This is not your fault, but this strikes me as a crazy system, and I'm not sure what the standard of review should be when the IJ allows in some evidence so the IJ is making up his or her mind not solely based on the record in front of the asylum officer. What am I supposed to do with all this? I understand your Honor's concerns, and in another case that may be problematic, in this particular case, however, the record reflects that the IJ not only looked at everything that was before the asylum officer, but also looked at everything. Everything was considered no-go. Obviously, the IJ has to. But in this particular case, really, the IJ looked at any evidence and testimony and concluded based on everything that was before her that it did not need... But what do I do with the argument made by Petitioner that if this had been a full-fledged hearing in front of an IJ instead of an appeal from the adverse decision by the officer, if this had been a full-fledged hearing, the Petitioner would have presented and would have been allowed to present more evidence. It would have been a different level of preparation by the Petitioner's lawyer, and it would have been a different presentation. What am I supposed to do with that? Well, this Court, at this stage, the only thing that this Court is really looking at, I mean, the evidence, the substantial evidence standard is what's being applied here, and the Court is looking at whether or not... The substantial evidence standard applied to what? To what evidence? To all of the evidence in front of the IJ or only to the evidence that was in front of the asylum officer when we were reviewing the decision of the asylum officer. Well, the immigration judge reviewed the asylum officer's decision de novo, and the immigration judge considered everything. Again, this is a case where this is not a standard case where the immigration judge just concurred and simply moved on. The immigration judge took in evidence, took in testimony, and she was not required to do so here. So in this particular case... I understand why you're doing this, but you're not really engaging with the substance. I understand. I think that in another case that may be problematic, but in this particular case, it was not an issue because, again, the immigration judge looked at everything and it was sufficient and the record evidence, there's nothing in the record that compels a reversal of the negative reasonable fear finding in this case based on the facts in this case. I don't know if that answers your question specifically, but... It doesn't, it doesn't. If I'm looking only at the evidence that was in front of the asylum officer, and the asylum officer clearly bungles, maybe doesn't even understand exactly the evidence that was actually in front of him with respect to this particular case because he starts reciting out of a different case. If I'm only looking at the evidence in front of the asylum officer, and the only question in front of the asylum officer is this frivolous, which is what the asylum officer is supposed to decide, this does not look like... It may be a loser, but this does not look like a frivolous case to me. Well, I would just first note, and with respect to the asylum officer's decision, while there appear to be some issues, I would note that the actual interview and also the summary that the asylum officer provided at the end of the interview appeared to be consistent with everything that the petitioner testified to. And again, the immigration judge concluded that any issues with the asylum officer's decision did not seem significant because his overall decision was consistent with the question and answer portion of the interview. So we're arguing that even if there was an error, it didn't prejudice the petitioner. But just even looking at the asylum officer's decision, while there's some citation issues, overall, it does not appear that that went to the heart of the finding, which is really that the petitioner did not establish. Was the petitioner represented in front of the asylum officer? Correct. Yes, the petitioner was represented throughout his proceedings. By his current counsel. And this case, and I know your Honor's next question was that you believe that petitioner did establish a reasonable possibility. Ultimately, we're looking at whether or not the substantial evidence standard has been met here. So again, specifically, before the agency, petitioner did not establish, did not meet his burden because with respect to persecution, there's no issue that he was not harmed. There's no issue with respect to threats and the incidents that happened to his family. There's been no link shown because the 2006 disappearance of his brother appears to have been a personal dispute. His brother refused to join a cartel. Well, there's no personal dispute, that's a protected ground. He refused to join a cartel, but it didn't seem linked to petitioner's particular case. There's not even a suggestion of any link between what happened to his family members and him. And since 2006, there's been no issues with any family members. And additionally, there's internal relocation option, which petitioner did not provide any testimony that he would not be able to. But that's the government's burden, isn't it? That is if he meets the other standards, but that was an option. But again, that was just something that was a possibility and it's not the only thing in his case. There was other issues. For example, just in general, he testified to his family members not having any problems since 2006 and his testimony seemed to be a general fear of crime, mainly a general fear of crime and violence. So if we look at it, the record evidence here, there's nothing that would compel a reversal of this finding in his case. It seems based on his testimony that it's simply a fear of overall crime and violence, which is insufficient. And for the same... I'm sorry. Go ahead and make your concluding statement there. No, I just want to say that for the same reasons, he also did not establish a reasonable possibility of torture because he didn't show past torture or that he would be at risk of future torture, and he testified that he has no reason to believe he would be targeted. Sorry, Your Honor. Go ahead. Judge Fletcher, do you have any other questions? No, thank you. Judge Bennett? No, thank you. All right. Mr. Begay, thank you very much. Ms. Dober, you have some time. Thank you. I want to go back to the trier of fact question that you brought up at the beginning. You know, in the statute, also in that same subsection, it says that the trier of fact shall determine if the applicant has met his burden of proof. And I mean, that further suggests that we're talking about an immigration judge adjudicating on the merits the entire application. The other thing I want to point out is that that statutory provision was implemented before the reasonable fear regulations. And so Congress was not contemplating that an asylum officer would be adjudicating a withholding case. That's never been the case. And so when Congress directed the agency to draft regulations implementing CAT, that's all they asked them to do. And the agency went beyond that and decided that they were going to include withholding a removal in that reasonable fear process, but they weren't tasked with doing that. And so I think we do have a distinguishing argument. Yeah, if we were to adopt your argument, what's the practical consequence? Does that mean anyone who is coming in and seeking withholding automatically gets a full-fledged hearing in front of the IJ because the asylum officer is not capable, legally capable of screening? Is that what happens? I think at this, given the statutory scheme, yes. I mean, unless Congress wants to amend the statute to state that asylum officers can adjudicate those claims. I think that's the case. I have a bunch of problems getting to that step, but let's say we got to that step. I have trouble understanding why that would be the remedy for somebody who in fact did choose to appeal the decision to an immigration judge who clearly is a trier of fact and who reviews the record de novo. I mean, this is aside from whether the immigration judge here got it right, but even if the asylum officer couldn't do what the asylum officer did because the regulation is somehow ultra vires, why would there be a cognizable harm for those who did appeal and got a de novo review in front of somebody who clearly is a judicial officer? So the problem with that is that you can just look at this transcript and you can see the problem. This was not a de novo review. He didn't get the opportunity. That's a different question though. I mean, Judge Fletcher's question was what happens and your answer was in every case, you go right to a full hearing because the asylum officer shouldn't have done anything. The question of whether the judicial officer here acted correctly or not is a completely different question from the one that Judge Fletcher asked. Right. Well, I guess I want to make sure I'm understanding your question, Your Honor. You're asking if because you get a review of that, you're getting a trier of fact reviewing. Doesn't that obviate a problem, sort of a ultra vires problem with the asylum officer? If you ultimately have a judicial, a trier of fact, a judicial officer making a full review of the record, doesn't that obviate the problem with the asylum officer allegedly doing something ultra vires? Not necessarily because that review process has been interpreted to be a very kind of discretionary process at the, you can decide if they take new testimony, what evidence they consider. And so that is very different than a hearing on the merits at which you can present witnesses, present a full case. So a review hearing of a negative reasonable fear review is a very limited hearing and immigration judges haphazardly decide how they're going to do it. That's very different than a hearing on the merits where you present a full case. So your answer is still everybody wins automatically? Well, they don't win because... I mean, they get to a full hearing automatically. I mean, I think Congress has spoken to that in the statute. And so that's for the court to just interpret the plain language of the statute. And I believe, yes, they are. But, oh, sorry. Did you have, Your Honor, did you have a question? No, no, go ahead. Well, just, I mean, following up on Judge Bennett's question here, I'm just trying to process what you just said because I think it's most problematic in the circumstance where a petitioner does not appeal an administrative officer's negative review determination and have an ultimate decision made by IJ. Here, the petitioner did and from what we're seeing, the IJ said, you know, opened up the record apparently and said he could submit more evidence. Despite, I know you said your client being cut off, did review de novo the testimony or the record below. And considered all of that, I think that it's more problematic because the default is the asylum officer's decision stance when there's no request to review by the IJ after a negative fear determination. Is that correct? Yes. In this case, he was counseled by you and you did appeal. And so there was some ultimate level, you know, some ultimate review by an IJ. I think now we're trying to figure out how nuanced, you know, is the difference between having a full-fledged hearing in the first instance versus having a de novo review by the IJ. I think that's kind of what I'm wrestling with a little bit right now. I understand. And your best argument, I think you already gave it, but that was my question. Yeah. Does anybody else have any other questions? No. Any concluding statement? I just, I also just wanted to briefly, I mean, I know we've been sort of going back and forth on the same point, but the transcript, seven pages of testimony, and that's mainly the immigration judge talking. There is, I just don't think the court can. But on that front, let me just ask you because it came up and I'm sorry, but he did say below in response to the AO that this was a personal vendetta and it did appear, and I know you challenged this point though, that his family members had been living safely in the newer, you know, part of Mexico that they had moved to, if I understood the record correctly. Is that right? A few. Yes. But others fled to the United States. So when the IJ had that information, you know, I'm just not quite sure how strong your argument is with respect to the limited transcript, but I want to give you an opportunity to respond to that. Well, that doesn't make it a personal vendetta. It might go to whether he can establish that he more likely than not would face persecution based on his membership in his family. The cartel did threaten the family. So it wasn't as if there was just some personal vendetta and there's no, it's not tied to any kind of particular social group. I mean, they came back to the house and said they were going to kill the whole family if they returned. And so, you know, there is evidence that the threat and the fear he has is tethered to a particular social group membership, not a personal vendetta, even if the original, and the original targeting of his brother was apparently because he refused to join a cartel. But again, these things were, these things would be fleshed out at a merits hearing. And so as Judge Fletcher has pointed out, that initial hearing, it's a screening, to screen for frivolous cases. And Mr. Alonso, he met his burden at that stage. All right. Thank you. Thank you very much. Ms. Dobryn, Ms. Bagay, thank you so much. This is a very interesting case for us and it is now submitted on the briefs, the case of Jose Luis Alonso Juarez versus Merrick Garland. The next case on our docket is Juan Giovanni Mejia Urizar versus Merrick Garland. That also has been submitted on the briefs.
judges: MURGUIA, FLETCHER, BENNETT